### John Buckley v. William L. Gee, Executor of Last Will and Testament of Charles Gee, Deceased.

1. NEGLIGENCE—*Vicious Animals.*—Where a vicious animal is kept so that he can not have access to persons or commit injuries, a party having knowledge of his habits who goes within his reach, does so at his own peril.

**Memorandum.**—Action for injuries committed by a vicious horse. In the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Declaration in case; plea, not guilty; trial by jury; verdict and judgment for defendant; error by plaintiff. Heard in this court at the October term, 1894, and affirmed. Opinion filed December 6, 1894.

FRANK CROSBY and JOSEPH H. LAWLER, attorneys for plaintiff in error.

RUNYAN & RUNYAN, attorneys for defendant in error.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The plaintiff in error brought suit to recover damages for an injury received by having had his arm bitten and broken by a vicious stallion owned by the firm of Gee Brothers, general teamsters in Chicago, while he was in their employ.

The firm owned and operated several teams and the

plaintiff was one of their drivers, and had been such for nearly two years before the injury happened. Each team had a particular driver who had nothing to do with the team of any other driver. The stallion was sometimes used as one of a team, but the plaintiff had never driven him.

The general duty of the plaintiff was to take care of the particular team he drove, by cleaning, harnessing and driving them, and to clean their stalls, but nothing more, so far as work about the stable was concerned, and he had nothing to do with the care or charge of the particular horse that bit him.

The stallion had been kept in the stable for about ten years, including all the time that plaintiff worked there, and it was well known by all who worked about the stable that the stallion was vicious, and there was a general order to everybody to keep away from him. It was also testified by the foreman in charge of the stable, and by another witness for the defendant, that the plaintiff was particularly warned to keep away from the horse; and that he well knew of its vicious habits is clearly apparent.

The stallion was kept in a stall in one corner of the stable, and next to that stall, and separated from it by a partition three and a half or four feet high, was a stall that was kept vacant, so far as its occupancy by horses was concerned, for the convenience and safety of the man who had charge of the stallion and as a protection to others, and was sometimes used as a receptacle for articles used in the stable. Presumably while the plaintiff was in this vacant stall he was seized by the arm by the stallion and drawn half-way over the partition that separated the stalls before he was released by others who came to his aid. No witness saw either the plaintiff or the stallion at the moment the horse seized the plaintiff. The stallion was usually tied with about two feet and a half length of rope, and with that length of tether could get his head over the partition, which was built low in order to handily care for the stallion from the empty stall.

Although not the rule to do so, brooms and other imple-

ments that were used by the drivers to clear out stalls, were frequently put into the empty stall next to the stallion, and it may be that the plaintiff went there to get a broom or some other article needed by him in the discharge of his duties.

As to how the plaintiff came to enter the stall and be seized by the stallion the record is silent, for the reason that the suit was originally begun against Charles Gee as surviving partner, and he dying, his executor, William L. Gee, the defendant in error, was made defendant, and the plaintiff therefore was not a qualified witness as to facts occurring in the lifetime of the deceased.

But even though the plaintiff did enter the stall for the purpose of getting some article that was needed by him in the discharge of his duties, we think the jury found rightly against him.

Two or three other employes had been bitten by the horse during the period of plaintiff's employment, and the stallion was notoriously vicious and the plaintiff knew it. After the injury happened the stallion was seen to be tied in the usual manner, and although it might have been possible to have kept him tied with a shorter rope, it is entirely apparent from all the circumstances shown in the record that the plaintiff could, with the exercise of ordinary care and prudence, have got any implement that he needed from the stall without danger to himself.

If he carelessly put himself within reach of the stallion, and we think he must have done so, the jury should have found against him, as they did, and we think the judgment of the Superior Court should, therefore, be affirmed.